May it please the Court, my name is Edward Haas, and I represent the appellants in this matter. This is before you on the district court's denial of my clients, and I slap motion made pursuant to the California Code of Civil Procedure in the underlying malicious prosecution case. We have two assignments of error by the district court. One is that the district court impermissibly found that there was malice by my clients in the underlying action, and it's our position that the district court impermissibly drew inferences of malice, of subjective malice on my client's part from their recognition that there were weaknesses in the case. And there's clear California case law that says that you cannot infer malice from a lack of probable cause, that there has to be some other evidence of malice. Well, isn't this all being left to trial? You're trying to avoid the trial. We are trying to avoid the trial because we're trying to decide whether there was malice or not. Well, what we're the motion that was before the trial court puts evidence in front of a judge. And he said there's a possible, and he identified what could constitute malice, and we'll see. That's correct. He did. But what our position is is that. I don't know why that isn't good enough to at least get to a trial. Your Honor, it's our position that, based on the California cases that say that you cannot infer malice from a lack of probable cause, that that's the type of evidence that the district court judge relied upon. In other words, in the letters that Mr. Silley wrote to his clients, he was brutally honest about the pros and the cons of the case, and that's his job. Well, that's absolutely true, but I would think most people looking at them would think, well, that's a little far. I would respectfully disagree, Your Honor. I think if you look at Mr. Silley's August – I'm sorry, April 24th, 2008 letter. And I think that's the one that you're referring to. There's some statements in there where he acknowledges the weaknesses in his case. But then what he says right at the beginning, I believe that we have viable arguments that may defeat Greenspring's second motion to dismiss. Our main argument going forward is that you reasonably relied on representations that Greenspring would make donations to charities of Ann and Molly's behalf. I would submit that that is the true expression of Mr. Silley's – Well, to defeat a motion to dismiss doesn't mean you've got a cause of action to win. That's true. I don't think that shows any belief in the merits of the cause. Well, what we're talking about, Your Honor, is what is Mr. Silley's – I mean, the effect of that is to say to his client, you know, we can cause them a little trouble because they can't get it dismissed immediately. But it doesn't say that I've got a case here. I think he did say that, Your Honor. He said that in that case that he thought he had arguments – How does he say I have a case that can win? Well, I don't think that that's necessarily what's required. Well, I know it's not required, but if you're going to show that he had some belief in the merits, you've got to find better language than you have. Well, there is some language in the letter that states – and I think, I mean, wouldn't this support or be the basis as to why the district court did what it did in denying the motion is – I think it's on page – the April 24, 2008 letter. On the last page, it says, as discussed above, there is very little, if any, chance of proving this fact because it does not appear that Elsie ever had the right to give Malcolm Avenue to Anna and Molly. And he's talking about the gift. And then it goes on to say, in light of the fact that Elsie never had the right to give Anna and Molly that property, it is extremely unlikely that we will prevail on these claims. And then it goes on to say, if they have not been damaged, which is an essential element of most of your causes of action, then there is no case. Now, I know there are some qualifiers there, but it seems like there may be, in reviewing all of these statements that were made in the letter, sufficient basis to support the subjective aspect of this – of the element here on the – on trying to figure out whether or not there was malice. Your Honor, there's no question that Mr. Silley was brutally honest to the client about the problems with the case. I think it would be worse if he had sugarcoated it and said, don't worry about it. We're going to go forward. But he was carrying out his job as a counselor by giving them the pros and the cons. That's the way I read this letter. He doesn't – he does admit that there are problems with the case, and if things go a certain way, we will lose. That doesn't – in my mind, that doesn't mean that there's malice. But what basis did he have to tell the Millers that, you know, he believed that we have viable arguments that may defeat Greenspring's second motion to dismiss? Well, he talks later on in that paragraph that – that I just read to you from. The fact that you gave up your right to file a claim in the Turchin estate in reliance on the defendant's representation is sufficient to form an enforceable contract. So he then goes on to set forth what would be the counterarguments that he anticipates from Greenspring's, but he does state there the basis that he believed that he could get by the motion to dismiss and proceed with the case. I mean, there's no question that he acknowledged that there were problems. But I'd like to return to my question. Yes. Why is the ability to survive a motion to dismiss a basis for bringing a case? The question is, does he have merit? Is this a meritorious case? And you haven't answered that. Well, Your Honor, I read the letters saying that he thinks that there is merit to the case. Well, you very – Very thin, very thin. I acknowledge that. But it doesn't require that the case necessarily be a slam-bang winner. Oh, no. Don't try to sugarcoat it. He really says we don't have anything. Your Honor, I would refer you to the Sankster v. Petko case where the Court said attorneys have the right to preserve issues that are arguably correct, even if it's extremely unlikely that they will win. So it's a – it's not a – you don't have to have a case that is a slam-dunk winner or is more likely than not to win. As long as there's some basis that you have to go forward, that's what you need to defeat a malicious prosecution case. And here, there's no expression in any of these letters of any subjective ill will towards the other side or that he was pursuing this for an improper purpose or trying to extort a settlement out of him. It's his honest assessment of the case acknowledging that there are problems with it. And that's his job as a counselor to do that. And I think that it takes more than just an admission that there are problems with your case to prove subjective malice here. I don't know that I necessarily disagree with you. I mean, the letter – these letters – there's a couple, I think – can be read to support Greenspring's position, however, you know, contains statements showing that the attorneys here held out a slim read of hope for the Millers case. And so I'm just trying to figure out, because this is, you know, what to do. And I think we go back to the standard, like Judge Noonan is asking you about, of what's required. And isn't it just a minimal showing that there might be malice here? There are other statements in the letters here that show that you're consistent with your arguments that your lawyer client was trying to be brutally honest in his assessment of the case. But then there's some other statements that kind of support, well, he knew possibly that there was no probable cause or wasn't a sufficient basis for him to think that they would be successful, and yet proceeded anyway. And so the tricky part here is to see if there was enough here in the letters to support the subjective intent requirement that would, you know, affect the outcome of this motion at this point. That's right, Your Honor. I think that you hit the nail on the head. There are expressions in here, in these letters, of confidence that they will be able to get by the motion to dismiss. And there are also expressions of, but if it goes this way or if it goes that way, we will lose. And again, I know I'm repeating myself by saying this, but that's his job as a counselor, is to not sugarcoat it for the client and let him know that at the end of the day, they may not win. Now, does that mean that he's pursuing the case with malice? I would submit that the cases that we cited since the Sheldon Appell case saying that you cannot infer malice just from a lack of probable cause, that it takes something more than that. And what I don't see in these letters is any expression of, you know, ill will or hard feelings toward the other side or, you know, we're going to pursue this no matter what because we want to force him to settle with us or something like that, that would then – I think then you could definitely infer that there was a subjective state of malice here and that the district court would be right. I read the district court's analysis of the evidence as relying on the fact that there was – what he perceived was a lack of probable cause here, and from that he inferred that there was a malice. And I think that the case law in California is very clear that that's not a permissible basis to infer malice. In other words, you can't infer it just from the lack of the probable cause. And what I'm referring to is Judge Connie's order denying the second motion, and this is at the record at page 26, where he talks about, as such, this evidence is sufficient to show attorneys, defendants knew these allegations were not supported by probable cause when they made them. So I read that as him saying, I'm inferring the malice from the lack of probable cause here. Do you want to reserve the balance of your time? Yeah. Maybe I'll just make one point and then I'll sit down. The other assignment of error that we made was that the district court should not have allowed Green Springs to amend its complaint in response to the first motion. And there's clear case law in California saying that that's not appropriate on a motion, a slap motion, and that's the Simmons v. Allstate case that we cited. And I would also point out that Green Springs didn't really – essentially conceded that by not addressing it in their brief. Thank you, Your Honor. Thank you. Thank you. May it please the Court. Let's start with the last thing. I'll start with the last thing. That wasn't raised. That's why we didn't brief that. Leave to amend wasn't raised in this appeal. And had it been raised in the brief, we would have responded. There's Ninth Circuit authority on the matter. I don't have it in front of me, but it was referred to in the previous case, albeit as kind of a side reference that was decided by this Court before. But on federal rules of civil procedure, leave to amend is liberally granted. And we use federal civil procedure in diversity cases, not state civil procedure. And that's been the standard. As far as the – So if it had been raised, do you concede then that that's the law, that you would not – I want to make sure I understand. No. Had it been raised, we would have briefed it because it is allowed. It is proper. There's no error by the court, the district court, in granting leave to amend. On a slap? Yes. What's the case? It was the Greensprings v. Seeley. It referenced a case from Oregon. In that case, I don't have that case memorized, so I don't remember the reference. But we would have vigorously opposed that particular interpretation. But we didn't know they were going to raise it because they didn't raise it. In fact, they did make a reference on – in responding to our motion for sanctions that they intended to raise that at the end of the case maybe after we'd gone through a trial. But there's no reference where they say we're raising this issue in their briefing. All right. Go ahead. On this appeal. As far as looking at malice and looking at probable cause, in malicious prosecution actions in California, you look at each cause of action separately and each plaintiff separately in the underlying action. And here we have a number of very clear statements about the elements of the specific causes of action. And then we have some general statements that are argued as being magic words that eliminate the analysis, the clear statements of the analysis of these attorneys as to the actual elements of the causes of action that they've stated in their complaint and the first amended complaint. And it's interesting because one of these particular problems they have is that they make a clear statement in the July 30th, 2007 letter that Bob and Barbara Miller don't have any claims they can make because there was no promise to pay anything to or on their behalf, even alleged, and then yet they're added as plaintiffs. And I guess let's try to put this in context because the history here is rather remarkable. Apparently, the grandmother of a young girl, Molly, who had been adopted by some folks in Hawaii, the biological grandmother wanted to leave her or their parents something. Is that correct? She expressed a desire to give them a gift during her lifetime. She never expressed a desire to leave them something. Well, two weeks before she died, she left her house or the equivalent amount of money that her house was worth, $500,000. She didn't do that. What she did is she sent a letter asking if they were interested. The interesting thing is is that we do have statements from Barbara Miller that they weren't interested at that time. What happened is later Bob and Barbara Miller were involved with setting up a new school, and Barbara was the secretary for the school and she solicited a donation from Christine Dillon. Christine Dillon said that an entity called Grace Parish Church would make a donation. We don't know who that is. It apparently never existed. And so she took some money that, as it later turned out, belonged to Elsie Turchin, and she sent over a check to buy some property, but it was drafted wrong. It had the name of the wrong title company. And so it was sent back. And then a number of years later she sent a $500,000 cashier's check for the made out to the school. Nothing to the The purported representative of the grandmother sent out a $500,000 check to the parents of the biological granddaughter, correct? The adopted. Great-granddaughter, yes. Check was made out wrong. Took forever to get another check. By the time they got the second check, there were problems. There had been a falling out. Barbara Miller was apparently no longer satisfied with that school that was being built, and she made her request. At that time, she was informed that the money had come out of an account belonging to Greensprings, that Christine Dillon didn't have authority to give any The board of Greensprings would have had to have approved that. It was sent back. It was later discovered that that money actually belonged to the estate of Elsie Turchin, and it was returned to the estate of Elsie Turchin. And so the parents never got that money, the parents in Hawaii? And the parents never were going to get the money. That's part of the thing is they weren't going to get money. They thought they were going to get the money. No, they never did. That's part of the problem. They always believed it would go to someone else. Well, yes, right. But it was going to come through them to someone else. I mean, because of them. They would get to deliver the check is essentially what they understood. But that's $500,000 they were not going to give from their bank account, correct? I mean, it was going to come from the bank. That's correct. Right. Okay. So all of this happens, and then they end up without a check. People, I guess, that they had thought were going to get it based on all that occurred no longer can get the check. So then they go seek out legal assistance to find out whether or not they have a claim to this money, correct? Correct. And that's the lawyers? Yes. Right. And lawyers talk to them. Apparently we get the benefit of seeing the letters after a lawsuit is filed on whether or not to proceed, because the first lawsuit was dismissed. Is that correct? This lawsuit, they weren't involved in. There was a lawsuit with Molly Miller's biological mother, who was the granddaughter of Elsie Turchin. That was a separate matter. That was settled. But they didn't participate, and they declined to participate specifically when the fund was being discussed in that case. All right. So I guess we're here we are. Only we're here, the lawyers talk to, because the Millers want to pursue this, so they get legal counsel and talk about trying to get this money. They think, obviously, that they may have a basis to get the money in light of everything that has happened, and lawyers tell them and give them kind of an unvarnished, you know, look of what the situation is. Presumably the Millers say, let's go ahead and proceed, correct? Correct. And now the Millers have settled with Green Springs. Is that correct? That's correct, too. So the Millers are out of the picture after having told the lawyers, go ahead and proceed, after the lawyers have told them, hey, I don't know if you're going to win or not. There's ups, there's downs. They never say, you're for sure going to win, and we need to go and we need to stick it to them, do they? They don't. In fact, they tell them they identify specific required elements of their claims, the causes of action that they've included both in the complaint and later in the first amended complaint, that they don't have. And in part, they also say that the evidence, which is undisputed, shows that you don't have these elements. And that's part of the problem with this. And so just to make sure, they brought the lawsuit, it was dismissed, correct? It was dismissed. And that's kind of interesting, because there was a first 12b6 motion to dismiss, and it was granted, but they were given leave to amend. And what they did is when the attorneys came in and amended, they didn't follow the instructions that they were given by the trial judge, who explained to them, in his opinion, exactly what was missing, which matched what they had already told their clients was missing. They didn't address it. They said what he's requiring of us is a hurdle we cannot overcome, but they filed an amended complaint anyway. And that's dismissed? And so that was dismissed with prejudice on the second 12b6 motion. And now you filed this malicious prosecution case against them in Nevada, correct?  In California, I'm sorry. And they brought the anti-slap motion? Yes. So that's where we are? That's where we are. All right. What's Green Springs' relationship to the grandmother? Elsie Turchin at one time was the trustee of Green Springs. She actually had this was her charity. And so do you have a conflict here at all? I don't. I mean, the Green Springs doesn't have a conflict with all of this? No. I don't see one. So did she leave all the money to Green Springs? Before she died, she transferred a great deal of property to Green Springs, but she did not transfer all of her property to Green Springs. Okay. And so the letters, if we can get to the letters now, because as I was saying before, it appears that there are statements in the letters that you can pull out that support maybe that they knew that they did not have a good chance or, you know, it was going to be extremely difficult. But it seems like there's statements as well that reflect perhaps the subjective aspect that we have to consider and whether or not there was real malice. It seems like they qualify a lot in their letters. There's a statement in one of the letters that says, I believe that we have viable claims. That may defeat Green Springs' second motion to dismiss. I believe there is enough to present the court with the arguments that we may be able to survive. Another motion to dismiss. Should we get beyond the pleading stays, the strength of your cases, and the equities? So I'm just trying to figure out how does this support the subjective aspect that you have to establish at this stage of the proceedings? And this goes back to you look at what they say their reasons are as it relates to each cause of action. So, for instance, intentional and negligent, the two causes of action for interference with right to inherit, they had told their clients over and over again that they did not have any valid claims against the estate of Elsie Turchin or Elsie or the estate of Ward Anderson, who was Elsie's son. So their reason that they say they're extremely unlikely to get past the 12B6 motion is that they're missing the most critical element. And interestingly enough, Mr. Seeley is certified as a specialist in estate planning trust and probate law by the State Bar of California. It's one of those items of additional evidence on top of lack of objective probable cause that a juror can look at. And at this stage, we have to show minimal merits, but we have a direct statement on the central element where they say we don't have it. Because we don't have the central element, that's why we're probably not going to get past this motion. They're relying on the judge not looking at the elements on the 12B6 motion. But the judge did look at the elements on the 12B6 motion. But their statements are we don't have this critical central element. And they said it over and over again. And under the authorities, that is sufficient for showing of malice in California on a malicious prosecution suit. It's knowledge of lack of probable cause. Well, it just seems like there are some statements that tend to undermine the argument that the attorneys were subjectively malicious, and it seems like that's what you have to show at this stage. It's weighing the evidence is not something that's done at this stage. And so looking at the different statements. But one of the other things that's really interesting is that they make a general statement about the whole case and use that to offset against their specific statements about the individual claims. And the individual claims are what gets evaluated for both the probable cause element and the malice element. So you can have a case that has merit on some claims and does not have probable cause on others. And if you knew that on the ones that didn't that you had no probable cause, that's malice as to those claims. And that's what California law says. Thank you, Your Honor. Thank you. I'll give you one second, Your Honor. I asked about the case about the being able to amend after an anti-SLAPP suit was granted. Yes. What's your name, sir? I'm sorry. Carlton Briggs, Your Honor. That case is Verizon-Delaware, Inc. v. Kovac Communications Company, a 2004 case, 377F3-1081, specifically holding that granting defendants anti-SLAPP motion to strike without permitting leave to amend would collide with FRCP-15A's policy favoring liberal amendment. Thank you. I'd like to make a couple of brief points, if I may, Your Honor. First of all, in fact, we did raise the leave to amend issue in our opening brief. And I would refer the Court to page 38, where we made the argument that they should not have been given leave to amend. This is a motion that was made pursuant to the California anti-SLAPP motion. And there is clear authority in California that there is no right to leave to amend following the denial or the granting of a motion like that. And I would refer the Court again to the Simmons v. Hall State insurance case, where they point out that there is no such leave to amend in the statute and it won't be implied. And they draw the distinction between a motion to strike or a demur, which would be similar to a 12b-6 motion, and a motion such as this, which is an evidentiary motion. In other words, it doesn't test the sufficiency of the pleadings. It tests the sufficiency of the evidence. And finally, as far as the missing element about the – whether they had the right to make a claim against Mrs. Turchin's estate, I would refer the Court to Mrs. Miller's e-mail of April 28 of 2008 that's in the record at page 293. She says in the last paragraph there, we are entitled to $500,000 not because of any claim against Grandma's estate, which we never believed we had to begin with. And then she goes on to explain the reasons why. And I would submit that it wasn't because the lawyers believed that there wasn't such a claim. It's because the Millers were never intending to make a claim against Grandma's estate. Okay, thank you. Is there anything else? No, Your Honor. Thank you very much. Thank you both for your arguments. The case is now submitted.
judges: Schroeder, Noonan, Murguia